```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

ANTOINETTE BEMLEY-KENNEDY,

    Plaintiff,

vs.                                              No. 17-2740-JPM-dkv

STATE OF TENNESSEE DEPARTMENT
OF HUMAN SERVICES;
JUVENILE COURT CLERK OFFICE;
SHELBY COUNTY DA OFFICE,

    Defendants.

REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL

    On October 10, 2017, the plaintiff, Antoinette Bemley-Kennedy ("Bemley-Kennedy"), proceeding *pro se*, filed a "Complaint for Violation of Civil Rights Under 42 U.S.C. § 1983" against the State of Tennessee Department of Human Services, the Juvenile Court Clerk's Office, and the Shelby County District Attorney's ("DA") Office. (ECF No. 1.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

    Accompanying the complaint was a motion to proceed *in forma pauperis*, which the court granted on October 11, 2017. (ECF Nos. 2, 6.) For the reasons that follow, it is recommended that this case be dismissed *sua sponte* for failure to state a claim.

I.   PROPOSED FINDINGS OF FACT

Bemley-Kennedy filed this suit in a form complaint in which she only filled out the "Relief" section of the complaint.  (ECF No. 1.)  Bemley-Kennedy attached to the complaint a one-page "Statement" and a one-page "Profit Sheet."  (ECF Nos. 1-1, 1-2.)  In the Statement, she alleges that the Tennessee Department of Human Services has collected $15,449.91 from her son's father Keith Walker ("Walker") as of September 9, 2017, and $3,070.27 from her daughter's father Alfonzo Granger ("Granger").  (ECF No. 1-1.)  Bemley-Kennedy alleges that the child support payments have "been unreported to [her] for 20 + years."  (*Id.*)  The Juvenile Court Clerk's Office "pretend[ed] to mail" to Bemley-Kennedy on September 26, 2017, a number of checks they had received from Walker.  (*Id.*)

Bemley-Kennedy further alleges that she was shot by Granger on April 1, 1993, and that a Tennessee Department of Human Services case worker was involved in the incident.  (*Id.*)  According to Bemley-Kennedy, "the DA office allowed the hospital to move [her] to the prison ward where [her] condition worsen[ed]," and has targeted and blackballed her every move over the years.  (*Id.*)

In the "Profit Sheet," Bemley-Kennedy alleges that she became disabled in 1999.  (ECF No. 1-2.)  Further:

> While I was receiving benefits I was denied to participate in certain programs to earn some income for my children. I have been still trying to move forward due to the corrupt [sic] in the DA office toward me.  My race, religion and disability, etc[.] have been violated.

2

(*Id.*)

In the "Relief" section of her complaint, she requests:

> I would like for the court [to] start a federal investigation to audit the Department of Human Services, Juvenile Court, and prosecute whomever held my child support payments that are due to me in the amount of $15,449.91 as of 9-8-2017. I would also like for the court to provide federal protection until this matter is solve [sic].

(Compl. ¶ V, ECF No. 1.) In addition, she requests a lump sum of $10 million, tax free, and interest for twenty-six years of child support. (*Id.*)

## II. PROPOSED CONCLUSIONS OF LAW

### A. 28 U.S.C. § 1915(e)(2) Screening

Pursuant to Local Rule 4.1(a), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2). The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues. This report and recommendation will constitute the court's screening.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action

    (i)    is frivolous or malicious;

    (ii)    fails to state a claim on which relief may be granted; or

    (iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

B.   Standard of Review

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be

liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C.  <u>Bemley-Kennedy's Section 1983 Claims</u>

To successfully plead a Section 1983 claim, a plaintiff must allege that she was deprived of a right secured by the Constitution or laws of the United States and that such deprivation was caused

by a person acting under color of state law.  *See* 42 U.S.C. § 1983; *Fritz v. Charter Twp. of Cornstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1244 (6th Cir. 1989)(citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Section 1983 does not provide any substantive rights itself; it "merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994)(citation and internal quotation marks omitted).  "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citations omitted).

Bemley-Kennedy has not asserted any basis for this Section 1983 suit.  She has not set forth any cognizable deprivations of her constitutional rights or rights secured by federal laws.  The bulk of the complaint relates to her allegation that the Juvenile Court Clerk's Office and the Tennessee Department of Human Services failed to distribute child support payments to her for twenty years.  (ECF No. 1-1.)  In Tennessee, a party seeking distribution of support payments must exhaust administrative remedies before seeking judicial review.  Specifically, Tennessee law provides that "[a]ll support payments that have been paid to the clerk of the court shall be distributed by the clerk, as provided in the order of the court, within ten [] days."  Tenn. Code Ann. § 36-5-101(d)(1).  If an issue arises with the distribution of payments, the party must first contact the "customer service unit in the department's state office

for a conciliation process in which the customer service unit shall have thirty [] days to resolve the issue." *Id.* § 36-5-1002(a)(11)(A). If the issue remains unresolved, the party has the right to seek administrative review of the department's actions. *Id.* If the issue is not resolved at the administrative review level, the party may seek judicial review. *Id.* § 36-5-1003. Judicial review of the administrative hearing of the department of human services shall be conducted by the court having jurisdiction of the support order, or, if administrative action is not based upon an existing support order, judicial review shall be conducted in the chancery court of the county. *Id.*

Bemley-Kennedy has not alleged whether she has exhausted her administrative remedies with the Tennessee Department of Human Services. Even if she has, judicial review is not proper in this court because this court does not have jurisdiction over the distribution of the child support payments. *See id.* § 36-5-1003 (stating that judicial review shall be conducted either in chancery court or the court having jurisdiction of the support order); *see also Reguli v. Guffee*, 371 F. App'x 590, 595 (6th Cir. 2010)(holding that the *Rooker-Fieldman* doctrine divests the federal district courts of jurisdiction over challenges to state court orders); *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981)(stating that federal courts traditionally have refrained from exercising jurisdiction over domestic relations disputes whether

7

brought under the court's diversity jurisdiction or "under the guise of a federal question action" (citations omitted)).  For these reasons, Bemley-Kennedy has failed to plausibly set forth Section 1983 claims against the Juvenile Court Clerk's Office or the State of Tennessee Department of Human Services and it is recommended that such claims be dismissed.

Bemley-Kennedy also names as a defendant the Shelby County DA's Office alleging that, after she was shot by her daughter's father Granger in April 1993, the DA's office allowed the hospital to move her to the prison yard where her condition worsened.  (ECF No. 1-1.)  Bemley-Kennedy also states that the DA's office has been targeting and blackballing her every move for years.  (*Id.*)  Again, Bemley-Kennedy has not asserted any basis for her Section 1983 claim against the DA's Office.  She has not set forth any cognizable deprivations of her constitutional rights or rights secured by federal laws.  Bemley-Kennedy's allegations are conclusory and there are no facts from which the court can infer any deprivation of constitutional rights.  "[C]onclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under section 1983."  *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)(citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)).  It is thus recommended that Bemley-Kennedy's Section 1983 claim against the Shelby County DA's Office be dismissed.

III. RECOMMENDATION

For the foregoing reasons, it is recommended that the complaint be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

Respectfully submitted this 18th day of October, 2017.

```
s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE
```

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.